THOMPSON, J.
 

 This suit is for $5,686.94 balance due on account stated and rendered August 21, 1925. A plea of prescription of three years was filed, and after hearing evidence thereon, the plea was overruled. The defendant acquiesced in that ruling and has expressly abandoned the plea in his brief.
 

 The defendant answered, denying any indebtedness to plaintiff whatever, admitting, however, in answer and by statement attached thereto that he had drawn drafts on plaintiff, ordered certain goods, and. incurred certain freight charges paid by plaintiff from December 3, 1919, to December 10, 1920, aggregating $6,415.12, to which was added interest charge of $2,067.48, making a grand total of $8,482.60.
 

 It was further alleged that the plaintiff was indebted to defendant in the sum of $7,-253.84, with legal interest on certain amounts thereof from certain specified dates, the principal, and interest so claimed exceeding the amount due plaintiff by the sum of $995.45, for which judgment was prayed in reconvention.
 

 A trial was had before a jury, which rendered a yerdict rejecting the plaintiff’s demand. The plaintiff has appealed. The defendant has not answered the appeal, but in his brief asks that the verdict and judgment be affirmed.
 

 The plaintiff firm had been the cotton factor and commission merchant of the defendant for a number of years and their business relations had been entirely satisfactory.
 

 In November, 1919, Mr. Geren, the president of plaintiff corporation visited the section where the defendant resides in Pointe Coupee parish, and while at the cotton gin of one D. O. Evans, it is claimed that he advised the defendant not to accept 40 cents per pound for his cotton, which had been offered by a cotton buyer from Marksville, but to ship the cotton to the plaintiff firm and that he would guarantee that defendant would obtain more than 40 cents.
 

 
 *570
 
 ■ The defendant did ship 27 bales and which was received by the plaintiff some time in December, 1919, and later 4 bales more were shipped to the plaintiff.
 

 Of the 31 bales 24 were held by the plaintiff from December, 1919, until August 21, 1925, when they were sold at 26% cents, netting the defendant $2,471.02.
 

 At the time the 27 bales were received by plaintiff in December, 1919, the defendant only owed the plaintiff some $574.87 as shown by the account.
 

 There were various items of debit and credit added thereafter, and on June 20, 1920, it appears from the account the defendant owed plaintiff a balance of $4,395.66. So that, if the 24 bales of the 27 had been sold at any time between the time the cotton was received and June 20, 1920, even at 40 cents and at New Orleans weights, the plaintiff would have been indebted to the defendant in the sum of $344.74 on June 20, 1920.
 

 From that date to March 24, 1921, the defendant was charged with certain items and given credit for a few small items, which left a balance due plaintiff as shown by the account, $6,02S.75.
 

 There appears to be very little difference between the amount of the debit items on the account and the amount admitted on the statement attached to the defendant’s answer.
 

 The difference between the parties arises from a large accumulation of interest extending over the five years during which the plaintiff held the defendant’s cotton.
 

 If the cotton had been sold say around February 1, 1920," even at 40 cents and at New Orleans weights, the defendant would not on August 21, 1925, have owed the plaintiff anything.
 

 A careful analysis of the account shows that the total debits from August 25, 1919, down to the close of the account August 21, 1925, amounted to $8,498.79. The accumulated interest amounted to $2,640.64, or a total debit of $11,139.43.
 

 The total credits appearing on the account during the period stated were $5,026.86, to which was added interest in defendant’s favor of $624.18, making a total credit of $5,651.04. If the plaintiff had sold the cotton at 40 cents per pound at New Orleans weights on February 1, 1920, it would have netted defendant $4,740.40, and with interest down to August 21, 1925 ($2,106.83) would have brought the defendant’s credits up to $12,498.27, a sum greatly exceeding the debits in plaintiff’s favor.
 

 We have dealt with 8 per cent, interest because that was the rate charged in the account by plaintiff and the rate allowed on the credits of defendant to which no objection was made.
 

 The real issue in the case therefore is whether the plaintiff through its president induced the defendant to ship his cotton on a promise that it would net the defendant more or as much as 40 cents per pound.
 

 If that was true, then the plaintiff was not acting in good faith in holding the defendant’s cotton for over five years and allowing the interest to accumulate on the advances made on the cotton while it was in plaintiff’s possession and under its control.
 

 It is shown by the evidence that cotton was quoted on the cotton exchange as high as 41 cents from December, 1919, to June, 1929, both months inclusive.
 

 Indeed it is admitted in plaintiff's brief that, when plaintiff received the 27 bales of cotton, the quotations on middling cotton on the New Orleans market were 40% to 41 cents per pound.
 

 With reference to the alleged promise of a price of 40 cents, Mr. Geren denies that he
 
 *572
 
 ever made such a promise to the defendant. 1-Ie also denies that he ever received any instructions to sell the cotton either verbally by phone or by letter. He is, however, contradicted by the defendant, by the defendant’s brother, and by D. O'. Evans.
 

 The defendant testified that a cotton buyer from Marksville sampled the cotton at Evans’ gin and said he would give 40 or 42 cents a pound for it. Mr. Geren came along and said it was worth 40' or 43 cents and that he would give that for it, get that for it, and if they would ship it to him in New Orleans he would get better than that for it and would give us more money.
 

 The defendant also says that he tried to get the cotton sold, but could not; that he called plaintiff over the phone several times about it and had his brother to go and see plaintiff and ask plaintiff to sell the cotton.
 

 Steve -Barber fixes the conversation at his house. He testified: That, when he returned from New Orleans about the middle of November, he found Mr. Geren, D. O. Evans, Dr. Morgan, and witness’ brother at witness’ house. That his brother opened the conversation and stated that he had been offered by a buyer from Marksville 40 cents for his short cotton and 42 cents for his long staple. That Mr. Geren had offered him 40 cents for the short and 43 for the long, with the understanding that, if the market was as good when he got back to New Orleans as it .was when he left, he would give him that price for his cotton. That he advised his brother not to ship the cotton to New Orleans; that he would lose 825 a bale.
 

 Whereupon Geren remarked that he must have a mighty poor opinion of him. This witness also testified that he met Mr. Geren in the cotton exchange in February, 1920, and told him that his brother had requested him to tell Geren that he wanted his cotton sold.
 

 That Geren told him he could sell the cotton' for 45 cents and to tell his brother that he was looking after that end of the line and that when the cotton was. sold he will find he has got some good friends in New Orleans.
 

 Mr. D. O. Evans testified that he and defendant were offered 40 and 42 cents a pound by a buyer from Marksville and that Geren from New Orleans said that he would give them more than that for the cotton and that he shipped the defendant’s cotton to the plaintiff.
 

 Again Mr. Geren testified that he never had any letter asking the sale of the cotton. However, on April 1, 1921, the defendant in ■ a letter to plaintiff said that he did not think it was fair and right for plaintiff to punish him for their mistake in holding the cotton.
 

 “You looked at this cotton and assured me in the presence of Mr. Evans that it was good cotton and worth forty cents a pound what I asked for it and you said that if the market was as good when you reached New Orleans as when you left that you would give me that price for it. The market had broken some. * * * However, later on and while the cotton was in your hands the market advanced two or three cents higher than it was quoted the day you agreed that this cotton was worth forty cents
 
 and though I repeatedly ashed you to sell this cotton
 
 [italics ours] you still held it. Therefore I feel like you held it for your account and not mine.”
 

 In the light of this testimony, we think that the plaintiff was obligated to protect the defendant, at the price of 40 cents by selling the cotton at a time when that price could have been obtained. In holding the cotton for a better price, the plaintiff assumed the risk of the loss sustained.
 

 Even at the price of 40 cents per pound, -
 
 *574
 
 the defendant will not he made whole, as we have already shown he was offered and could have obtained that price on the gin weights which were much higher than the New Orleans weights, and would not have had to pay freight and commission charges.
 

 The reason given by plaintiff for holding the cotton for over five years is not entirely satisfactory. There is no doubt the cotton during several months could have been sold at 40 cents, and if the plaintiff declined to sell because the firm was of the opinion that the cotton was worth more money, they assumed the risk of the decline in the market, and should not visit the heavy loss on the defendant. To give judgment in favor of the plaintiff would be to allow it to profit from its own wrongful act to the great loss of the defendant, who was induced to send his cotton to the plaintiff on the promise that the plaintiff could give him a better price than he was offered at the gin.
 

 The case was tried by a jury, whose verdict was in favor of the defendant. The verdict appears to be a fair and just one.
 

 It was approved by the court below, and we see no sufficient reason for disturbing it.
 

 Judgment affirmed.
 

 O’NIELL, O. J., absent, takes no part.